Marshall, C. J.
This is an original suit filed in this court praying a writ of mandamus, and the cause has been submitted upon a general demurrer to the petition on the ground that the facts stated do not constitute a cause of action. There is involved in this proceeding the proper construction of certain sections of the Griswold Act, 109 Ohio Laws, 336 to 348. The Griswold Act was approved May 14, 1921, and Section 23 thereof provides: “This áct shall take effect from and after January 1,1922, and its provisions shall govern and apply to all ordinances, resolutions, measures and proceedings pending on that date.”
■ The petition alleges that on or about March 3, 1920, the city council of Portsmouth passed an ordinance declaring it necessary to improve certain streets of that city by paving the same, and providing for the payment of the property owners’ proportion of the cost in twenty annual installments; it further alleges that the abutting property owners were legally served with notice of such ordinance, and that thereafter, on or about July 7, 1920, council passed a further ordinance determining to proceed with the improvement, in which ordinance pro - *501 vision was also made for the payment of assessments in twenty annual installments. Thereafter the improvements were completed, and on July 6, 1921, council passed an assessing ordinance, giving to abutting owners the option to pay assessments for improvements in cash within thirty days of the passage of the ordinance, or in twenty annual installments with interest. Thereafter on November 16, 1921, the city council passed certain ordinances authorizing bond issues to provide funds to pay part of the. cost and expense of such improvements in anticipation of special assessments to be levied upon abutting properties, such bonds being serial bonds maturing in one to twenty years.
Section 3914, General Code, contains the following provision: “Council ordinances and proceedings relating to the issuance of such bonds or notes shall not require publication.” Notwithstanding these very plain provisions, council nevertheless proceeded to publish those ordinances, such publication being made on November 22, 1921, and November 29, 1921.
On December 29, 1921, the sinking fund trustees of the city of Portsmouth notified council of their refusal to purchase the bonds; on December 30, 1921, the commissioners of the sinking fund of the school district of Portsmouth took similar action; and on January 12, 1922, the industrial commission of Ohio notified the city council of its refusal to purchase the bonds. Thereupon, beginning January 20, 1922, the bonds were advertised for sale in two newspapers of general circulation in Portsmouth, and sealed bids were invited, to be opened at noon, Tuesday, February 21, 1922. Various pro *502 posáis were received at the office of the auditor, and the bonds were ordered sold to the Title Guaranty & Trust Co., of Cincinnati, that company being the highest and best bidder. The defendant J. - Earl Chandler, as auditor of the city of Portsmouth, refused to sign and deliver the bonds to the purchase?, on the ground that they were not issued prior to January 1, 1922, asserting that by the terms of the Griswold Act the bonds could not be issued after January 1, 1922, unless their maturities should not extend beyond the period of ten years. Section 6 of the act (Section 2295-9, General Code; 109 O. L., 338) contains the following pertinent provisions:
“That the maturities of bonds issued by counties and other political subdivisions, including charter municipalities, shall not extend beyond the following limitations as specified in the following classification, the period to be measured from the date of the bonds.
“Bonds issued for * * *
“Class (d) — waterworks meters, fire apparatus, road rollers, furniture and furnishings, machinery in garbage disposal plant, landscape planting, playground apparatus, sidewalks, curbs, gutters, and the construction, reconstruction, resurfacing, grading, or drainage of roads, highways, streets, or alleys, ten years.”
Section 14 of the act (Section 2295-12, General Code; 109 O. L., 344) provides: “All bonds hereafter issued by any county, municipality, including charter municipalities, school district, township or other political subdivision, shall be serial bonds maturing in substantially equal annual installments beginning not earlier than the date fixed by law for *503 the final tax settlement between the county treasurer and the political subdivision or taxing district next following the inclusion of a tax for such issue in the annual budget by the county auditor as provided by law and not later than eleven months thereafter.”
It cannot be doubted that the city of Portsmouth is a political subdivision and it is unquestioned that the improvement is for the construction of streets in that city, and, if the Griswold Act applies, the maturity of the assessment bonds cannot be made to extend beyond the 10-year period. The sole questions for determination are, first, whether the Gris-wold Act does apply to the ‘ ‘ ordinances, resolutions, measures and proceedings” pertaining to these improvements; and, second, whether they are “ordinances, resolutions, measures and proceedings” pending on January 1, 1922.
First, an examination of the act of May 14, 1921, shows that it did not expressly repeal Section 3815, General Code, the last sentence of which is as follows: “Assessments for any improvement may be payable in one to twenty installments at such time as council prescribes.” Because that section was not expressly repealed, it is claimed that by virtue of that section it is permissible to give property owners twenty years to make payment of assessments, and that it follows that council is also permitted by virtue of that provision to provide the money to pay for the improvement in anticipation of collection of assessments by issuing bonds for the same period. If the premises stated justify the conclusions reached, it would only result in that portion of Section 3815 above quoted being rendered inoperative, or repealed by necessary implication, be • *504 cause the Griswold Act, being a later act, if inconsistent with any of the provisions of Section 3815, must prevail. The provisions of Section 6 of the Griswold Act (Section 2295-9, General Code), above quoted, are so plain as to leave no doubt that that section applies to street improvements; and there is nothing in that section calling for judicial construction.
Second, it is contended by counsel for the defendant that by virtue of the provisions of Section 14 of the act, above quoted, inasmuch as the bonds had not been delivered to the purchasers before January 1, 1922, they could not be legally delivered unless their maturities were within the limitations of class (d) of Section 6 above quoted.
Although Section 14 refers to “All bonds hereafter issued by any county, municipality,” etc., and provides that all such bonds must be serial bonds, and fixes the time of beginning of maturities, that section contains no provision pertaining to, the time of final maturities. We find nothing in that section in terms prohibiting the issuance of bonds after January 1, 1922. If the determination of this controversy were to depend upon the meaning of the word “issue” we would not hesitate to say that the word “issue” must include delivery. But we are of the opinion that the technical meaning of the word “issue” does not determine the controversy. By reference to paragraph (e), Section 1 of the act (Section 2295-6, General Code), we find: “The ‘bond-issuing authority’ shall, in the case of any bond issue, be the county commissioners, board of education, township trustees, city council or other board or officer who, under the provisions of law or char *505 ter, has the function of determining upon the issuance of such bonds.” Clearly in the instant ease the bond-issuing authority is the city council of the city of Portsmouth, and to it alone is assigned the function of determining upon the issuance of the bonds. It would be a very singular situation if the council should have the function of determining upon the issuance of the bonds but no power to fix the terms, conditions and characteristics of the bonds, including their maturities. It being provided by statute that the council shall be the bond-issuing authority, it follows that it must be the sole authority and that its. authority must be free from the interference of any other board or official of the city government. The bonds must of course be executed and delivered by the executive officers of the city, and in this particular case that duty devolves upon the city auditor. But it does not follow that the city auditor has anything to determine, or that he has any discretion to exercise. It is urged that because in paragraph (e) of Section 1 we find the words “or other board or officer” there must therefore be boards or officers other than the city council having the function of determining upon such issuance. If such construction should be placed upon that section then it would be wholly indefinite and uncertain as to what would be the proper bond-issuing authorities in cities. It is evident that the ‘ ‘ other board or officer” referred to in that section must have reference to boards and officers created under special legislative acts, or those other boards and officers provided for in home-rule cities, where the charter itself confers upon some board or officer other than the city council the function of determining *506 upon bond issues. In the instant case the allegations of the petition make it clear that the city council was the “bond-issuing authority,” and we are of opinion that Section 23 of the act has reference only to legislative “ordinances, resolutions, measures and proceedings” and that the “proceedings” therein referred to do not have reference to executive and administrative acts.
The legislative branch of the city government, to-wit, the city council, being made the bond-issuing authority, its, will is supreme, as it always is in legislative matters falling within its sphere of action. It would be wholly inconsistent with the basic theory of the division of government into three branches to permit the legislative will to. be defeated and subverted by any act of the administrative branch. In the instant case it is very clear that the legislative branch, to-wit, the city council, had fully completed its work and that all ordinances, res - olutions, measures and proceedings necessary to the authorization and completion of the improvement itself, and to the authorization of assessments and bond issues in anticipation of the payment of assessments, were fully -completed and ended before January 1, 1922. This being true, the statute should not be so construed as to defeat its operative force and effect by putting it in the power of administrative officers to defeat it by delays on their part. As above stated, that legislative act was approved May 14,1921, and more than seven months grace was given thereafter before the act went into effect, to give municipalities and other political subdivisions the opportunity to complete all legislation before January first follow *507 ing. If any part of the necessary legislation had not been completed, and any ordinance, resolution, measure or proceeding had been pending on that date, a different situation would arise. Let us suppose that all steps had been taken and the bonds had been sold and signed by the auditor before January 1,1922, and the purchaser had failed to accept and pay for the bonds, making it necessary to re-advertise for bids, thereby postponing final sale and delivery beyond January 1, 1922; under such hypothesis, on the theory of the defendant, there being no delivery there was no issuance and all municipal legislation pertaining thereto must fail. It was no doubt contemplated by the legislature that the period from May 14,1921, to January 1,1922, would be ample to complete all legislation which had been begun, and that there would be no necessity for any uncompleted legislation at the time the law was to go into full effect. It should not be held necessary that the legislation should proceed with undue haste in order to cover all possible contingencies which might arise in the administrative department, and it is more reasonable to so construe Section 23 of the act above quoted as to make the same apply only to the proceedings of the legislative branch.
The conclusions we have reached make it unnecessary to determine whether under the provisions of Section 3902, General Code, a reassessment oi'dinance could legally be passed, or whether the property owners have any property rights in the ordinances pertaining to these improvements.
We have therefore reached the conclusion that there is a clear legal duty on the part of the city auditor to sign, execute and deliver these bonds. *508 The peremptory writ of mandamus will therefore be allowed.

Writ allowed.

Johnson, Hough, Wanamaker and Jones, JJ., concur.